IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 04-cv-02505-LTB-OES

RICHARD RRA-SHADA,

Plaintiff(s),

vs.

CITY AND COUNTY OF DENVER, COLORADO, et al.,

Defendant(s).

RECOMMENDATION THAT DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT BE GRANTED
AND
RECOMMENDATION THAT PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT BE DENIED

ENTERED BY MAGISTRATE JUDGE O. EDWARD SCHLATTER

## INTRODUCTION AND PROCEDURAL BACKGROUND

Plaintiff is proceeding in this case without counsel.  I have reviewed all of the

pleadings that have been filed by plaintiff with the deference that is due to them

pursuant to the case law.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Hall v.

Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).  Although parties who proceed without

counsel are entitled to a liberal reading of their pleadings, they are not entitled to have

the court act as an advocate on their behalf.  Hall, 935 F.2d at 1110.

Plaintiff filed this case pursuant to 42 U.S.C. § 1983 as a result of his arrest and

ninety-minute incarceration by the Denver police for interference and resisting arrest.

In his First Cause of Action, plaintiff attempts to state a multiplicity of actions against

the City and County of Denver, including false arrest, excessive force, malicious

prosecution, illegal search and seizure, and a claim that appears to allege negligent supervision and/or training. *See* Compl. at 4-8.  In his Second Cause, plaintiff attempts to state a multiplicity of actions against the individual police officers, Dennis Bedenbender and Shanna Michael, including excessive force, assault and battery, defamation of character and "malice aforethought."  Id. at 8-10.  In his Third Cause, plaintiff has sued a civilian, Robert A. Kaser, who came to the aid of the police officers when they were attempting to subdue plaintiff for purposes of making an arrest. Against defendant Kaser, plaintiff appears to have alleged a claim for battery.  Id. at 10.

The City defendants filed a motion for summary judgment on October 21, 2005, and defendant Kaser filed a motion for summary judgment on October 20, 2005. Plaintiff was given until November 15, 2005, within which to respond to those motions.

On November 15, 2005, plaintiff filed a document that is entitled "Motion for Summary Judgment."  All of the defendants have moved to strike plaintiff's motion, arguing variously that he failed to meet the filing deadline for a motion for summary judgment, and he failed to provide appropriate citations to the record for the claims made in his motion.

I will deny defendants' motion to strike plaintiff's motion.  However, I agree with the defense arguments that are directed at plaintiff's failures to provide appropriate citations to the claims that he makes in his motion.  I address this aspect of plaintiff's motion in my discussion below.

**Summary of recommendations.**  As I note in my discussion, whether plaintiff's motion is considered as a "motion for summary judgment," or is considered as a

response to the defendants' motion for summary judgment, he has in either instance

failed to demonstrate that the undisputed facts support his request to have summary

judgment entered in his favor, and he has failed to demonstrate that any genuine issue

of material fact prevents the entry of summary judgment in favor of all of the

defendants.  I will, therefore, recommend to District Judge Lewis T. Babcock that

plaintiff's motion for summary judgment be denied, and that the two motions for

summary judgment filed by the defendants be granted.

**Advisement to plaintiff.**   Plaintiff is advised that he is entitled to seek review or

reconsideration of my recommendations by filing an "objection" within ten days.  Failure

to file such an objection or appeal within ten days will result in the waiver by plaintiff of

plaintiff's right to present such an objection to the district court judge.  A complete

advisement of plaintiff's right to appeal or object is attached to this Recommendation on

a page which is entitled "Advisement Under Fed.R.Civ.P. 72."

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment should be granted where the "pleadings, depositions,

answers to interrogatories, and admissions on file, together with affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c).  The evidence in the

record must be viewed in the light most favorable to the nonmoving party, and the

nonmovant must be allowed the benefit of all reasonable inferences to be drawn from

the evidence.  Maughan v. SW Servicing, Inc., 758 F.2d 1381, 1387 (10TH Cir. 1985).

The moving party bears the initial burden of demonstrating the absence of a

3

genuine issue of material fact.  This burden may be discharged by showing that there is

an absence of evidence to support the nonmoving party's case.  Celotex Corp. v.

Catrett, 477 U.S. 317, 325 (1986).  Once the moving party has properly supported its

motion for summary judgment, the burden shifts to the nonmoving party, who "may not

rest on mere allegations or denials of his pleading, but must set forth specific facts

showing that there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 256 (1986).

A genuine factual issue is one that "can reasonably be resolved only by a finder

of fact because [it] may reasonably be resolved in favor of either party."  Id. at 250.

The substantive law identifies which facts are material.  Id. at 248.  A dispute over a

material fact is genuine when the evidence is such that a reasonable jury could find for

the nonmovant.  One of the principal purposes of summary judgment is to isolate and

dispose of factually unsupported claims or defenses, and the rule should be interpreted

in a way consistent with this purpose.  Celotex, 477 U.S. at 323-24.

## DISCUSSION

### A

Defendants' motions for summary judgment set forth the facts that they assert

are undisputed.  Each of the motions supports their respective allegations of fact by

references to exhibits that are attached to the motions.  Defendant Kaser supports his

factual allegations by references to his own affidavit, which is attached to his motion as

Exhibit A.  Kaser apparently was not deposed by any party.  The City defendants

support their factual allegations by references to three exhibits that are attached to

their motion: (1) the affidavit of Gerald Whitman, Chief of Police for the City and County of Denver; (2) portions of the deposition transcript of Officer Bedenbender, which was taken by plaintiff himself; and (3) portions of the transcript of the deposition of plaintiff.

Plaintiff has attached two exhibits in support of his motion: (1) an affidavit of himself, and (2) what appears to be the entire transcript of the deposition of Officer Bedenbender. Plaintiff does not attach any portions of his own deposition, although the City's Exhibit 3 makes clear that his deposition, in fact, was taken. In fact, Exhibit 3 reflects that the deposition of plaintiff was quite lengthy in light of the fact that one of the pages of Exhibit 3 is page 339, with no indication that the deposition was ending at that point.

**B**

Plaintiff's Motion for Summary Judgment lacks any support or documentation for the factual assertions or claims that plaintiff is attempting to present in it. In the final analysis, his motion is nothing more than unsupported arguments and conclusions.

**Plaintiff's affidavit.** First, I conclude that plaintiff's affidavit can provide no support for any of the contents of his motion/response, and is a sham effort to create an issue of fact. The remarks made by plaintiff in his affidavit are conclusory, self-serving and were never subjected to cross-examination, or even follow-up questioning, by defense counsel. I will strike his affidavit.

The Tenth Circuit Court has outlined three factors that a court should consider in determining whether a supplemental affidavit is an effort to create a sham issue of fact. Ralston v. Smith & Nephew Richards, Inc., 275 F.3d 965, 973 (10th Cir. 2001). The

5

Court instructs courts to consider the following: (1) Was the affiant cross-examined during his earlier testimony?  (2) Did the affiant have access to the pertinent evidence at the time of his earlier testimony?  And, (3), does the earlier testimony reflect confusion which the affidavit is attempting to explain?  Id.

Here, plaintiff had the opportunity during his deposition to provide the evidence that he attempts to present in his affidavit; he had access to the "pertinent evidence" at the time that he was deposed; and he has provided no evidence in his affidavit that would show that he was "confused" during his deposition, and needed to provide testimony in an affidavit in order to "explain" the confusion that occurred during his deposition.  For these reasons, I conclude that his affidavit represents an effort to create a sham issue of fact, and I will ignore its contents.  See Franks v. Nimmo, 796 F.2d 1230, 1237 (10th Cir. 1986) (holding that an affidavit that contradicts earlier sworn testimony should be disregarded only if it "constitutes an attempt to create a sham fact issue").

However, even if I were to consider the contents of plaintiff's affidavit, it contains nothing that could be considered a fact that would raise a genuine issue with regard to any of the material facts in this lawsuit.  At best, plaintiff states, in conclusory fashion, little more than that he was not committing any crime or offense at the time that the police officers determined to arrest him.  See Pltf's Mtn SJ, Ex. 1, ¶ 5.  Such a general denial of offensive conduct does not raise an issue of fact.

**Plaintiff's citations to deposition of Officer Bedenbender.**  Second, I conclude that plaintiff's citations to the deposition testimony of Officer Bedenbender are

6

inaccurate, unreliable and misleading.  Plaintiff's citations to the testimony of Officer

Bedenbender are the *only* citations that he makes in his motion to anything that is

contained in the evidentiary record that has been created during the discovery process.

Plaintiff provides no other citations, including either to his own deposition or to his

affidavit.

Plaintiff's citations to Officer Bedenbender's testimony provide no support for the

assertions that he makes in his motion. For example, plaintiff's first assertion with a

supporting citation states that Officer Bedenbender did "intentionally strike Plaintiff with

his vehicle." Id. at 2. Plaintiff cited to page 8, lines 15-19, of Officer Bedenbender's

deposition  in support of this statement.  Not only does that portion of the transcript not

support plaintiff's allegation, it completely contradicts it.   The dialogue between plaintiff

and the officer at lines 15 to 19 is as follows:

> Q:    At any time during your encounter with the plaintiff did
>        he ever brush up against your car?

> A:    Yes.  I said you struck – the plaintiff struck my side
>        view mirror or the door area around it with one hand.

Id., Ex. 2, 8:15-19.

For his second citation to Officer Bedenbender's testimony, plaintiff states that

"Officer Bedenbender failed to control his vehicle, failed to operate at a safe and

reasonable speed, failed to keep a proper lookout, failed to yield the right-of-way." Id.

at 2.  Plaintiff cites to testimony that is contained on pages 74, 75 and 76 of Officer

Bedenbender's deposition.  Nothing in any of those portions of the transcript provide

any support whatsoever for the claims that plaintiff is making in his argument.  Again,

7

the testimony flatly contradicts the factual assertions that plaintiff is presenting, that is, that the officer operated his motor vehicle unsafely and failed to yield to plaintiff. Plaintiff asked the officer, "did you yield to the plaintiff the right-of-way?"  Officer Bedenbender responded, "Yes.  I mean . . . , I had control of my vehicle.  I never struck you, sir."  Id. Ex 2 at 74:19-24.

Ultimately, I stopped checking plaintiff's citations for accuracy, and I simply read the entire transcript of the deposition of Officer Bedenbender.  Not surprisingly, nothing in that transcript lends any support to the claims or arguments that plaintiff attempts to present in his Motion for Summary Judgment.

**Plaintiff's failure to present supporting factual data.**  Finally, having excluded plaintiff's affidavit, and having determined that the citations to Officer Bedenbender's deposition were inaccurate and unreliable, I conclude that the content of plaintiff's Motion for Summary Judgment consists of nothing more than plaintiff's arguments.  The statements of plaintiff in his motion do not constitute evidence or testimony on his behalf because they were not produced as part of the discovery process, were not made under oath, were not subjected to cross-examination, and the statements may or may not be consistent with his deposition testimony.  The law is clear that plaintiff "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 256.  Plaintiff's statements in his motion are not "facts."  Thus, he has done nothing to meet his burden either to support his so-called "Motion for Summary Judgment" or to rebut the facts and arguments that are presented in defendants'

motions for summary judgment.

## C

Defendants' motions for summary judgment may not be granted solely because plaintiff has failed to raise a genuine issue of material fact. The contents of their motion must demonstrate that on the undisputed facts that are presented they are entitled as a matter of law to have judgment entered in their favors. I conclude that both defendants have met their burdens.

The facts that gave rise to the arrest and temporary incarceration of plaintiff are not disputed, and are contained in the deposition testimony of Officer Bedenbender. *See*, *in particular*, City's Mtn SJ, Ex. 2, Bedenbender depo., pgs 5-7. They also are summarized as "undisputed facts" in the brief of the City defendants at pages 4 to 7.

On December 11, 2003, Bedenbender and Michael were assigned to cover a call at a business called Ace Cash Express, which was located at Vine and Colfax in the City of Denver. The officers were informed that a person had attempted to rob the store, and claimed that he was armed with a bomb. The officers went to Ace Cash Express, and were contacted by two employees. One of these employees was defendant Robert Kaser, a vice president of Ace Cash Express. Bedenbender had these two individuals ride with him in his police vehicle.

The officers attempted to secure a safety perimeter around the location of the Ace Cash Express by directing all persons to evacuate the area. While engaged in this effort, Bedenbender spoke to Officer Michael by radio. She informed him that she had been contacted by a party, later identified as plaintiff. She told Bendenbender that she

had instructed plaintiff twice to leave the area, and plaintiff had refused.  Michael

described plaintiff as very upset, and that in response to her directives that he leave

the area he had screamed obscenities and vulgarities at her, including a demand that

Officer Michael "suck my dick."  Bedenbender instructed Michael to call him for

assistance in the event that plaintiff re-appeared, and they would arrest him.  In the

view of Bedenbender, plaintiff was obstructing the efforts of law enforcement to keep

people out of the perimeter of the zone of the bomb threat.

Shortly after this radio contact with Michael, plaintiff appeared and approached

the side of Bedenbender's car.  Officer Bedenbender told him, for the third time, that he

was required to leave the area.  Plaintiff responded by saying, "fuck you," and struck

the police vehicle with his hand.

Bedenbender concluded that plaintiff was refusing to leave the area as ordered,

and he exited the vehicle to contact and arrest plaintiff.  For his own safety, as well as

the safety of plaintiff, the officer placed plaintiff in an arrest control technique called a

twist lock.  While doing so, plaintiff swung at Bedenbender.  The officer then struck

plaintiff with a distraction-type blow, but plaintiff was unfazed and continued to act

aggressively.  Bedenbender struck plaintiff a second time.  Officer Michael arrived, and

attempted to assist Bedenbender in arresting plaintiff.  Plaintiff went to the ground, but

refused to give up his hands to the officers so that they could apply handcuffs.  Plaintiff

refused to cooperate, continued to struggle, and continued to attempt to get up off the

ground.  He kept his hands underneath him so that he could not be handcuffed.

Defendant Kaser executed an affidavit in which he stated that he was seated in

the police car while the officers were struggling with plaintiff, and he knew that both police officers were armed.  *See* Kaser Mtn SJ, Ex. A at ¶ 7.  He feared that plaintiff himself might be armed, or that he might be able to seize one of the officer's guns. Kaser concluded that the sooner plaintiff was in custody, the safer he and the other Ace employee would be.  Kaser stated that he was a graduate of the San Diego County Sheriff's Academy, and that he felt competent to assist the officers in restraining plaintiff.  For that reason, he went to the aid of the officers, and assisted them in their efforts to control plaintiff.

Plaintiff was finally subdued and controlled.  He was checked for injuries, and determined to have only a small cut on his chin and a small abrasion or cut on his forehead.  He was offered medical treatment, but he refused it.  Bedenbender testified that he had used only the amount of force that was necessary in order to subdue plaintiff and make him comply with lawful orders.

Plaintiff was jailed, and charged with interference, disobedience of a lawful order and resistance.  He was released approximately 90 minutes later.

### 1.  Claims against Bedenbender and Michael.

Plaintiff has plead three claims for relief against the individual officers: excessive force, defamation and "malice aforethought."  The undisputed facts reflect that the officers are entitled to have summary judgment entered in their favor on all three of these claims.

**(a) Excessive force.**  Plaintiff alleges that the officers used excessive force during the events the resulted in his arrest.  The only evidence that is available in the

record in regard to the events surrounding plaintiff's arrest is contained in the

deposition testimony of Officer Bedenbender.  Nothing in Bedenbender's deposition

supports plaintiff's allegation that the officers used excessive force.

Claims of excessive force are analyzed under the objective reasonableness

standard of the Fourth Amendment.

> The reasonableness of an officer's conduct must be
> assessed "from the perspective of a reasonable officer on
> the scene," recognizing the fact that the officer may be
> "forced to make split-second judgments" under stressful and
> dangerous conditions.  The Fourth Amendment standard
> requires inquiry into the factual circumstances of every
> case; relevant factors include the crime's severity, the
> potential threat posed by the suspect to the officer's and
> others' safety, and the suspect's attempts to resist or evade
> arrest.  The reasonableness standard is "clearly established
> in the context of § 1983 actions.

Medina v. Cram, 252 F.3d 1124, 1131 (10th Cir. 2001), *quoting* Graham v. Connor, 490

U.S. 386, 395 (1989), internal citations omitted.

Bedenbender's testimony reflects that the force used by the officers to subdue

plaintiff was reasonable in light of the circumstances presented by plaintiff's conduct.

The officers were attempting to secure the safety of themselves and civilians in the

area from the harm that could occur if a bomb, in fact, exploded.  Plaintiff refused to

leave the area as ordered, cursed at both officers who had ordered him to leave, defied

their orders, and resisted Bedenbender's effort to arrest him by attempting to strike the

officer.  Plaintiff was not in a position to countermand the officer's order to leave the

area because his presence could threaten the safety of everyone if an explosion

occurred.  Plaintiff overtly defied the officers' directives to leave, and left the officers no

choice but to arrest him.  When plaintiff physically resisted the effort to arrest him, including by swinging at Bedenbender, the officers were entitled to use whatever force was reasonable to subdue him.

Plaintiff argues that the officers had insufficient opportunity "to observe the Plaintiff and draw a conclusion that Plaintiff was involved in, or had committed a crime," meaning, in particular, the robbery of the Ace Cash Express.  Pltf's Mtn SJ at 6. Plaintiff misses the point.  He was not arrested because he was a suspect in the robbery.  He was arrested because he was given an order to leave the area, and he overtly defied the order to do so.

The undisputed facts reflect that the force used in these circumstances was reasonable.  Thus, I will recommend that plaintiff's claim regarding excessive force be dismissed.

**(b) Defamation.**   Plaintiff complains that after he was arrested by Bedenbender and Michael, the officer's made "false and misleading statements" that resulted in charges against him for resistance and interference.  Pltf's Mtn SJ at 8.  Plaintiff asserts that "on May 11, 2004, all criminal charges were rightfully dismissed against Plaintiff." Id.  To prove a claim of defamation, plaintiff must show that a defendant (1) made a statement; (2) which was published to third persons; (3) that the substance of the statement was false when published; and (4) that defendant knew it was false, or made the statement with reckless disregard as to whether it was false or not.  See C.J.I.3d 22.1.

First, neither in his Complaint nor in his Motion for Summary Judgment did

plaintiff present the exact statements that are the subject of his claim that the officers defamed him.  He has stated nothing more than that "[a]fter effecting the arrest of Plaintiff, said officers, Bedenbender and Michael presented false and misleading information/statements about the Plaintiff to the District Attorney's Office instigating criminal procedures to be brought against him with a crime."  Pltf's Mtn SJ at 7-8. Having failed to present the statements that are at issue, he has failed even to state a claim for defamation.

Second, as the officers correctly point out, the Colorado Governmental Immunity Act ("CGIA") provides that an action in tort will not lie against a public employee "unless the act or omission causing such injury was willful and wanton."  Colo.Rev.Stat § 24-10-109.  Plaintiff has not disputed that the officers are public employees.  Willful and wanton conduct is defined in Colorado's exemplary damages statute as "conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff."  Colo.Rev.Stat. § 13-21-102.  Plaintiff has pointed to no evidence in the record that would even suggest that the officers' actions in presenting their report to the prosecuting attorney were "willful and wanton" as that term is defined in the statutes.  Having failed to show such evidence, plaintiff has failed to demonstrate that the officers are not entitled to the immunity that is afforded to them by the CGIA.

Third, plaintiff has pointed to no evidence in the record that would suggest that the statements of the officers, whatever they were, are false.  The only evidence in the

14

record that describes the events at the time of plaintiff's arrest is the deposition

testimony of Officer Bedenbender.  That testimony is undisputed, and it establishes that

plaintiff, in fact, interfered with the police and resisted arrest.  Assuming that the

officers presented the same information to the prosecuting attorney, they could not

have made any false statements.  At any rate, plaintiff has not quoted the statements

that he claims are false, and has not presented any facts that would show the

statements, in fact, to be false.

For all of the above reasons, I will recommend that plaintiff's claim for

defamation be dismissed.

**Attorney fees to defendant officers.**  The officers point out that upon a finding

by the court that plaintiff did not "substantially prevail" on his claim for defamation, the

court is required to order plaintiff to pay attorney fees to the officers for their defense

against this claim.  Colo.Rev.Stat. § 24-10-110(5)(c); <u>Robbins v. Jefferson County</u>

<u>School Dist. R-1</u>, 186 F.3d 1253, 1260 (10th Cir. 1999).  The statutes of Colorado

provide as follows:

> In any action against a public employee in which
> exemplary damages are sought based on allegations that an
> act or omission of a public employee was willful and wanton,
> if the plaintiff does not substantially prevail on his claim. . . ,
> the court shall award attorney fees against the plaintiff or the
> plaintiff's attorney or both and in favor of the public
> employee.

Colo.Rev.Stat. § 24-10-110(5)(c).

The Tenth Circuit Court of Appeals has held that "[w]hen exercising jurisdiction

over pendent state claims, we must apply the substantive law of the forum state and

reach the same decision we believe the state's highest court would, just as we would if our jurisdiction rested on diversity of citizenship." Lytle v. City of Haysville, Kansas, 138 F.3d 857, 868 (10th Cir. 1998).  Thus, this court is required to apply the substantive law of the State of Colorado, and it is required to follow the terms of the statute that requires the payment of attorney fees by any plaintiff who fails to "substantially prevail" on a claim that alleges willful and wanton conduct by a public employee.

The fourth element of a claim of defamation, recited above, requires a showing that the defendant must have acted knowingly, or with a reckless disregard for the truth of the statements that were uttered,  Thus, the tort of defamation against officers Bedenbender and Michael falls within the terms of the statute.  Even if it did not, to avoid the immunities that are contained in the CGIA, plaintiff is required to allege and prove willful and wanton conduct in regard to any tort that he is attempting to prosecute against a public employee.

Plaintiff did not "substantially prevail" on his claim of defamation, and for that reason the court is required by the terms of the statute to award to the officers the attorney fees that they incurred in the defense of this claim.  In fact, plaintiff's claim of defamation against the officers is downright frivolous.  Even in the absence of § 24-10-110(5)(c), the officers would be entitled to their fees under the statute that allows an award of attorney fees against a party for the "bringing, maintaining, or defense" of an action that is determined to be frivolous.  Colo.Rev.Stat. § 13-17-101.  I recognize that plaintiff is proceeding without counsel, but no reasonable person could conclude that a police officer could be subjected to damages for defamation for presenting to a

prosecuting attorney an offense report in regard to the circumstances surrounding the arrest of an individual.

I therefore recommend that the police officers be awarded the attorney fees that they incurred as a result of their defense against plaintiff's claim of defamation.

**(c) "Malice aforethought."**  I know of no such claim as "malice aforethought," and plaintiff has directed the court to no statute or case that demonstrates that such a claim exists.  Therefore, I will recommend that Judge Babcock dismiss this claim.

### 2.  Claims against the City.

Plaintiff also has filed claims against the City of Denver.  The claims include false arrest, excessive force, malicious prosecution, illegal search and seizure, and a claim that appears to allege negligent supervision and/or training.

The Tenth Circuit Court of Appeals has stated the test for liability to attach to a municipality:

> Under 42 U.S.C. § 1983, a local government may be held liable for the constitutional violation of its employees only when employee action pursuant to official municipal policy . . . caused a constitutional tort.  Therefore, to establish municipal liability a plaintiff must show (1) the existence of a municipal custom or policy and (2) a direct causal link between the custom or policy and the violation alleged.

Hollingsworth v. Hill, 110 F.3d 733, 742 (10th Cir. 1997) (citation and quotations omitted); Pembaur v. Cincinnati, 475 U.S. 469, 480-481 (1986).  In order to hold the City liable, plaintiff must show not only that a constitutional violation occurred, but also that some municipal policy or custom was the moving force behind the violation.  Myers v. Oklahoma County Bd. of county Comm'rs, 151 F.3d 1313, 1320 (10th Cir. 1998).

Plaintiff has presented no facts that demonstrates that a constitutional violation occurred.  His only reference to any custom or policy is contained at page 4 of his motion, where he alleges that Bedenbender's testimony establishes that the officer used excessive force while arresting him, and that the City trained him to use excessive force.  Pltf's Mtn SJ at 4.

First, as I discussed above in my Section 1(c), nothing in Bedenbender's deposition supports plaintiff's allegation that the officer used excessive force.  Medina v. Cram, 252 F.3d 1124, 1131 (10th Cir. 2001), *quoting* Graham v. Connor, 490 U.S. 386, 395 (1989), internal citations omitted.  Second, the undisputed evidence in the record on this issue, reflects that the force he used to subdue plaintiff was reasonable in light of the circumstances presented by plaintiff's conduct.  The officers were engaged in an effort to secure the safety of themselves and civilians in the area of the bomb threat from the harm that could occur if a bomb, in fact, exploded.  Plaintiff refused to leave the area as ordered, cursed at both officers that ordered him to leave, defied the officer's orders, and then resisted Bedenbender's effort to arrest, including by attempting to strike the officer and by physically resisting the officer's efforts to cuff him.  Plaintiff overtly defied the officers' directives to leave, and left the officers no choice but to arrest him.  When plaintiff resisted the effort to arrest him, the officers were entitled to use whatever force was reasonable to subdue him.  The undisputed facts reflect that the force used in order to subdue and arrest plaintiff was reasonable.

Plaintiff's failure to demonstrate that a constitutional violation occurred ends the inquiry.  However, even if plaintiff had been able to present facts that would show that

Bedenbender, in fact, had used excessive force, plaintiff's claims against the City still would fail because plaintiff presented no evidence that would demonstrate the existence of a municipal practice or policy that was the moving force behind any constitutional violation.

The City presented as part of its evidence the affidavit of Chief of Police Gerald Whitman.  In his affidavit, the Chief repeatedly stated that the Denver Police Department has no policy, custom or practice which teaches or condones unlawful or false arrests or detentions, unlawful searches and seizures, the use of excessive force upon persons, the use of false statements in offense reports or any practice that would constitute discriminatory treatment of individuals based upon their race, skin color, ethnic diversity or economic conditions.  *See* City Mtn SJ at 1-2, ¶¶ 3-7.

As noted above, plaintiff has presented no facts in his Motion for Summary Judgment.  In particular, plaintiff has failed to present any evidence that would tend to rebut the testimony of Chief Whitman, or raise a genuine issue of fact, in regard to the non-existence of any municipal policy or practice that would cause any alleged violation of plaintiff's rights.  For that reason, I will recommend that Judge Babcock dismiss all of plaintiff's claims against the City.

### 3.  Claims against Robert Kaser.

Robert Kaser is a civilian who aided the police in their effort to subdue and control plaintiff as the officers were arresting plaintiff.  In his Third Cause of Action, plaintiff has sued Kaser for battery.  Compl. At ¶¶  50-53.

The Colorado Supreme Court has outlined the elements of battery as follows:

19

(1) An actor is subject to liability to another for battery if

     (a) he acts *intending to cause a harmful or offensive contact* with the person of the other or a third person, or an imminent apprehension of such a contact, and

     (b) an offensive (or harmful) contact with the person of the other directly or indirectly results.

(2) An act which is not done with the intention stated in Subsection (1, a) does not make the actor liable to the other for a mere offensive contact with the other's person although the act involves an unreasonable risk of inflicting it and, therefore, would be negligent or reckless if the risk threatened bodily harm.

White v. Muniz, 999 P.2d 814, 816 (Colo. 2000), *quoting* Restatement (Second) of Torts, § 18 (1965) (emphasis added by Supreme Court).  The Supreme Court emphasized in its opinion that the law of Colorado requires both that the defendant intended to contact the person, and that the defendant intended the contact to be harmful or offensive.  Id. at 818.

Plaintiff did not depose Kaser.  This means that the only factual evidence in the record in regard to Kaser is that which is contained in the deposition testimony of Bedenbender, and in Kaser's affidavit.

As a matter of law, no reasonable jury could conclude from the undisputed testimony of Bedenbender and Kaser that Kaser intended to commit an offensive battery upon plaintiff.  Rather, the undisputed evidence reflects that Kaser was a witness to the fact that plaintiff was assaulting the police officers, by swinging at them and by physically resisting their efforts to handcuff him.  Plaintiff has presented no evidence or testimony that would suggest that Kaser acted other than in a good faith

effort to defend himself and the officers against the dangers presented by plaintiff's defiance of the orders to leave the area of the bomb threat, and by plaintiff's physical struggle with the officers.  No reasonable jury could conclude from this undisputed evidence that Kaser intended to commit a battery upon plaintiff.  For that reason, I will recommend that Judge Babcock grant summary judgment to Kaser on the single claim that plaintiff has alleged against him.

**Kaser's request for immunity and attorney fees.**  Kaser argues that the Colorado statutes provide that he is immune from any liability in regard to plaintiff's suit against him, and as a consequence of this immunity is also entitled to be reimbursed for the attorney fees and costs that he has incurred. Kaser Mtn SJ at 3.  The statute upon which Kaser relies states as follows:

> (1) Any person licensed as a physician and surgeon under the laws of the state of Colorado, or any other person, who in good faith renders emergency care or emergency assistance to a person not presently his patient without compensation at the place of an emergency or accident, including a health care institution . . . shall not be liable for any civil damages for acts or omissions made in good faith as a result of the rendering of such emergency care or emergency assistance during the emergency, unless the acts or omissions were grossly negligent or willful and wanton.  This section shall not apply to any person who renders such emergency care or emergency assistance to a patient he is otherwise obligated to cover.

Colo.Rev.Stat. § 13-21-108(1).

I cannot conclude that this statute can be applied to the factual circumstances presented by this case.  The statute is written for the purpose of protecting doctors and other persons who render the type of assistance to a person that a doctor ordinarily

would provide, meaning specifically, medical or medical-type assistance.  The term

"emergency care" is normally understood to refer to medical care, and that term defines

and limits the subsequent phrase, "emergency assistance."  Nothing in the language of

this statute reflects that it is intended to cover the circumstances here, which involve a

civilian who came to the aid of police officers who were engaged in a physical struggle

with a person that they were attempting to arrest.

Kaser also argues that the Colorado General Assembly enacted § 13-21-

116(2)(a) as part of an effort to extend immunity beyond emergency assistance, to

provide immunity for all persons who perform a service or an act of assistance without

compensation for the benefit of another person.  Kaser Mtn SJ at 4.  That statute,

including its heading, states as follows:

> **Actions not constituting an assumption of duty – board member immunity – immunity for volunteers assisting organizations for young persons.**  (1) It is the intent of the general assembly to encourage the provision of services or assistance by persons on a voluntary basis to enhance the public safety rather than to allow judicial decisions to establish precedents which discourage such services or assistance to the detriment of public safety.
>
> (2) To encourage the provision of services or assistance by persons on a voluntary basis, a person shall not be deemed to have assumed a duty of care where none otherwise existed when he performs a service or an act of assistance, without compensation or expectation of compensation, for the benefit of another person, or adopts or enforces a policy or a regulation to protect another person's health or safety.  Such person providing such services or assistance or adopting or enforcing such a policy or regulation shall not be liable for any civil damages for acts or omissions in good faith.  Such performance of a service or an act of assistance for the benefit of another person or adoption or enforcement of a policy or regulation

22

> for the protection of another person's health or safety shall
> not create any duty of care with respect to a third person,
> nor shall it create a duty for any person to perform such a
> service or an act of assistance nor to adopt or enforce such
> a policy or regulation.

Colo.Rev.Stat. 13-21-116(1) & (2).

As I found in regard to the previous statute, I cannot conclude that this statute can be applied to the factual circumstances presented by this case. As the title of the statute reflects, the intent of the statute is to provide immunity to persons and organizations who involve themselves in "the provision of services or assistance . . . on a voluntary basis." I do not read the statute to cover the emergency circumstances that were presented by the facts of this case. Rather it protects the people and organizations who act as part of an organized effort or project to provide services or assistance to people.

However, I do conclude that § 16-3-203 is applicable here. That statute states as follows:

> **Preventing crime – reimbursement.** Any person
> who is not a peace officer as defined in section 24-31-
> 301(5), C.R.S., who is made the defendant in any civil action
> as a result of having sought to prevent a crime being
> committed against any other person, and who has judgment
> entered in his favor shall be entitled to all his court costs
> and to reasonable attorney fees incurred in such action.

Colo.Rev.Stat. § 16-3-203.

Mr. Kaser falls within the parameters of this statute. The undisputed evidence reflects that he has been made a defendant in this case solely because he "sought to prevent a crime being committed" against officers Bedenbender and Michael. Kaser is

entitled to have judgment entered in his favor, and upon the entry of judgment he is entitled to be reimbursed the attorney fees and costs that he has incurred.

The Colorado Supreme Court discussed the application of this statute in Schwankl v. Davis, 85 P.3d 512 (Colo. 2004).  The Court stated that "the intervenor must have had a subjective, good faith belief that [his] action would prevent a crime.  If the person seeking to prevent a suspected crime is, in fact, mistaken about the existence of a crime, but acted in good faith, [he] is still eligible for the protection of this statute."  Id. at 516.  The Court noted that "the General Assembly enacted section 16-3-203 to 'encourage someone who witnesses a crime to either report it or to participate in putting an end to it' and to 'encourage people to be a bit involved.'" Id. at 517, quoting House of Rep. 2d Reading of H.B. 77-1403, 51st Gen. Assembly, 1st Reg. Sess. (May 21, 1977) (statement of Rep. Zakhem, the bill's prime sponsor).  Thus, the Supreme Court concluded as follows:

> Awarding court costs and attorney fees to someone who sought in good faith to prevent a future crime does just this. It attempts to rectify the scenario in which the alleged perpetrator of the crime brings a costly lawsuit in order to punish the person who interfered with his apparently illegal activity.  Because of the reduced risk of having to pay high costs and fees as a result of reporting ongoing crimes, legislators hoped that citizens would feel more inclined to get involved and prevent future crimes.

Mr. Kaser's efforts fall precisely within the scope and purpose of this statute. According to his undisputed testimony, he acted in good faith to prevent what he perceived to be acts in the nature of assaults upon the police officers, and to prevent what he perceived in good faith to be the possibility that plaintiff could obtain a weapon

24

in the midst of the struggle and cause even more serious harm to the officers and himself.

The undisputed facts reflect that plaintiff has not, and never could, prevail against Kaser on his claim of assault.  Kaser did no more than to act in a good faith effort to assist two officers who were attempting to subdue an individual who was resisting them with physical force.  For his efforts, he has been subjected to the demands and burdens of this baseless lawsuit.  The statute, in using the mandatory word "shall," actually compels the court to "rectify the scenario" in which Kaser has found himself by ordering plaintiff to reimburse defendant Kaser his fees and costs.  Therefore, I will recommend that Judge Babcock award to Mr. Kaser the attorney fees and costs that he has incurred in defending against plaintiff's claim against him.

### 4. Miscellaneous.

In his First Cause of Action, plaintiff named only the City.  He appears to have recited claims against the City for false arrest, false imprisonment, excessive force, malicious prosecution, illegal search and seizure and negligent supervision.  I have discussed his claims above, and I concluded that plaintiff had presented no evidence that would suggest that any of these claims were the result of a practice or policy of the City.  In an abundance of caution, I will briefly address these claims the same as if plaintiff had asserted them against the individual officers.

**False arrest and false imprisonment.**  The Tenth Circuit analyzes the constitutionality of a warrantless arrest under the probable cause standard.  Romero v. Fay, 45 F.3d 1472, 1476 (10th Cir. 1995)

25

(*citing* Beck v. Ohio, 379 U.S. 89, 91 (1964)).

> A police officer may arrest a person without a warrant if he
> has probable cause to believe that person committed a
> crime.  Probable cause exists if facts and circumstances
> within the arresting officer's knowledge and of which he or
> she has reasonably trustworthy information are sufficient to
> lead a prudent person to believe that the arrestee has
> committed or is committing an offense.

Id.; Gonzales v. City of Castle Rock, 366 F.3d 1093, 1105 (10th Cir. 2004) ("While an officer must obviously exercise some judgment in determining the existence of probable cause, the validity and accuracy of that decision is reviewed under objectively ascertainable standards and judged by what a reasonably well-trained officer would know.").

The undisputed evidence in the record reflects that officers Bedenbender and Michael had probable cause to arrest plaintiff.  They had ordered him twice to leave the area of a police investigation, and he had overtly defied the order both times.  When the officers attempted to arrest plaintiff for interference, plaintiff resisted their efforts to arrest and handcuff him.  Thus, the undisputed evidence reflects that the officers had probable cause to arrest plaintiff for interference and resistance.

Because the officers had probable cause to arrest, plaintiff's claim for false arrest must fail.  Additionally, because the arrest was lawful, the subsequent imprisonment necessarily also was lawful.

Plaintiff also argues that the charges against him were ultimately dismissed.  In his view, this provides support for his assertion that no probable cause existed.  Id. However, the law is clear that "a police officer is not liable for false arrest simply

because the innocence of the suspect is later established or because the suspect is ultimately acquitted or the criminal charges are dismissed." Abouzari v. Foster, 795 P.2d 1386, 1388 (Colo. 1990) *citing* Pierson v. Ray, 386 U.S. 547 (1967) ("A policeman's lot is not so unhappy that he must choose between being charged with a dereliction of duty if he does not arrest when he has probable cause and being mulcted in damages if he does."); *see also* Beyer v. Young, 513 P.2d 1086, 1088 (Colo.App. 1973) ("the acquittal of the plaintiff of the particular charge is not determinative of the lawfulness of the arrest"); Perry v. Bd. of County Comm'rs of Larimer County, 949 P.2d 99, 102 (Colo.App. 1997)(same).

**Excessive force.**  I have addressed this claim in section 1(c) above where I conclude that the officers did not use excessive force in arresting plaintiff.

**Malicious prosecution.**   A plaintiff may state a Fourth Amendment claim under § 1983 by alleging that he has been subjected to a malicious prosecution.  *See* Taylor v. Meacham, 82 F.3d 1556, 1561-62 (10th Cir. 1996).  The Tenth Circuit held in Taylor that "our circuit takes the common law elements of malicious prosecution as the 'starting point' for the analysis of the § 1983 malicious prosecution claim, but always reaches the ultimate question . . . of whether plaintiff has proven a *constitutional* violation."  Id.

In Colorado, the elements of a claim for malicious prosecution are: (1) the defendant contributed to bringing a prior action against the plaintiff; (2) the prior action ended in favor of the plaintiff; (3) no probable cause existed; (4) defendant acted with malice; and (5) plaintiff suffered damages.  *See* CJI-Civ. 4th 17:1 (1999); *see also*

27

Thompson v. Maryland Cas. Co., 84 P.3d 496 503 (Colo. 2004).

Here, plaintiff's claim fails because the undisputed facts show that the officers had probable cause for plaintiff's arrest.  Even if the elements of malicious prosecution are merely the "starting point" for any analysis of such a claim under § 1983, in Colorado the lack of probable cause is an essential element of malicious prosecution, and plaintiff has not demonstrated a genuine issue of material fact that would support that element.  In short, because the arrest was lawful, plaintiff cannot state a constitutional violation, and he, therefore, cannot state a claim for malicious prosecution.

**Illegal search and seizure.**  Assuming that plaintiff is asserting this claim as the result of the seizure of his person by the police officers, the claim fails because the officers had probable cause to arrest and seize him.

**Negligent supervision.**  Presumably, this claim is asserted against the City only.  Plaintiff has presented absolutely no evidence that would tend to suggest that the City supervised officers Bedenbender and Michael in a negligent manner.

**ORDERS**

1.  Defendant Kaser's Motion to Strike Plaintiff's Motion for Summary Judgment [Doc. 68, filed November 17, 2005] is DENIED.

2.  The City defendants' Motion to Strike Plaintiff's Motion for Summary Judgment [Doc. 70, filed November 18, 2005] is DENIED.

3.  IT IS ORDERED that plaintiff's Motion for Summary Judgment is received, and will be considered both as his motion for summary judgment and as his response to defendants' respective motions for summary judgment.

**RECOMMENDATIONS**

4.  I RECOMMEND that Defendant Kaser's Motion for Summary Judgment [Doc. 57, filed October 20, 2005] be GRANTED, and that the claim for battery alleged against him be DISMISSED.

5.  I RECOMMEND that the City defendants' Motion for Summary Judgment [Doc. 58, filed October 21, 2005] be GRANTED, and that all claims asserted against the City and the officers be DISMISSED.

6.  I RECOMMEND that plaintiff's Motion for Summary Judgment [Doc. 65, filed November 15, 2005] be DENIED.

7.  I recommend that judgment enter in favor of all defendants, and against plaintiff, and that defendants be awarded all of their costs, but including in particular that they be awarded the attorney fees and costs to which they are entitled by statute, as described above, as follows:

> (a) for officers Bedenbender and Michael, for the attorney fees and costs that they incurred in defending

against plaintiff's claim for defamation; and

      (b) for defendant Kaser for all of the attorney fees and costs that he incurred for defending against plaintiff's single cause of action against him for battery.

Dated at Denver, Colorado, this day of:  November 23, 2005

                BY THE COURT:

                s/ O. Edward Schlatter

                _____

                O. Edward Schlatter
                United States Magistrate Judge

## ADVISEMENT UNDER FED. R. CIV. P. 72

Be advised that all parties shall have ten (10) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. FED. R. CIV. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. United States v. Raddatz, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within ten (10) days after being served with a copy may bar the aggrieved party from appealing the factual and legal findings of the Magistrate Judge that are accepted or adopted by the District Court. Thomas v. Arn, 474 U.S. 140, 155 (1985); Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991); Niehaus v. Kansas Bar Ass'n, 793 F.2d 1159, 1164 (10th Cir. 1986).